UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY SCOTT, ) | |
| ) | |
| Plaintiff, ) | Case No. 08 C 5882 |
| ) | |
| v. ) | Magistrate Judge Sidney I. Schenkier |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this social security appeal challenging the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court issued a Memorandum Opinion and Order affirming the Commissioner's decision. *Scott v. Astrue*, No. 08 C 5882, 2010 WL 1640193 (N.D. Ill. Apr. 22, 2010). Plaintiff appealed, and on August 1, 2011, the Seventh Circuit vacated this Court's decision and remanded with instructions that the case be returned to the Social Security Administration for further proceedings. *Scott v. Astrue*, 647 F.3d 734 (7th Cir. 2011).

Ms. Scott now has petitioned this Court for an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (doc. # 58). Ms. Scott argues that the Commissioner was not substantially justified in his decision to deny her application for SSI and DIB, as viewed through the lens of the Seventh Circuit's decision to reverse and remand this Court's decision affirming the Commissioner's denial. Ms. Scott seeks a total award of $38,532.33 in fees

and costs for work done in this Court and in the Court of Appeals. For the reasons set forth below, this Court grants Ms. Scott's motion.

## I.

Under EAJA, a party who prevails against the United States in a civil action is entitled to an award of reasonable attorneys' fees. 28 U.S.C. § 2412(d). A plaintiff is eligible to recover attorneys' fees where (1) the plaintiff makes a timely application for fees; (2) the plaintiff is a "prevailing party"; (3) the government's position was not "substantially justified"; and (4) no special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A)-(B). No untimely filing or special circumstances are alleged here. Nor is there any doubt that the Seventh Circuit's decision makes Ms. Scott a "prevailing party." *See, e.g., Shalala v. Schaefer*, 509 U.S. 292, 300-01 (1993) (establishing standard for prevailing parties under EAJA).

Instead, the parties dispute only whether the government's position was "substantially justified," and, if not, whether the requested award is reasonable. We address each of these disputes in turn.

## II.

As has been observed elsewhere, district courts are admittedly in a "somewhat anomalous position" when they have ruled for the government on a claim like Ms. Scott's, only to see their decision come back to them through a court of appeals' reversal and a subsequent EAJA petition for fees. *Spaulding v. Massanari*, No. 99 C 7197, 2001 WL 826876, at *1 (N.D. Ill. July 23, 2001). The Seventh Circuit's opinion, of course, trumps our prior view of the case. *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 384 (7th Cir. 2010) ("if it is apparent from our opinion that we think the government lacked a substantial justification for its position, though the judge had

thought it not only substantially justified but correct, he must bow"). Thus, we "must accept the appellate court's view of the merits as the premise for evaluating the government's position," and not allow the previous judgment "to infect the determination of whether to award fees." *Id.* at 384, 387.

Under EAJA, the burden of proof rests on the Commissioner to show why its position in this litigation was substantially justified. *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). While EAJA does not define the term "substantially justified," the Supreme Court has held that the position of the United States is substantially justified if it is "justified in substance or in the main -- that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The court must determine whether "a reasonable person could conclude that the ALJ's opinion and the Commissioner's defense of the opinion had a rational basis in fact and law," even if that opinion was "completely wrong." *Bassett v. Astrue*, 641 F.3d 857, 859 (7th Cir. 2011).

"[T]he mere finding that the government's position was arbitrary and capricious" should not automatically result in an award of EAJA fees. *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). One factor useful in assessing such egregiousness is the tenor of the Court of Appeals' opinion itself, as "[s]trong language against the government's position" can provide support for an award of EAJA fees to the petitioning party. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). Yet the district court must avoid the "mistaken impression" that strong language in the higher court's opinion alone should enable a finding of lack of substantial justification. *Murphy v. Astrue*, 351 Fed. Appx. 119, 122 (7th Cir. 2009). "[I]t typically takes something more egregious than just a run-of-the-mill error in articulation to make the

commissioner's position unjustified -- something like the ALJ's ignoring or mischaracterizing a significant body of evidence, or the commissioner's defending the ALJ's opinion on a forbidden basis." *Bassett*, 641 F.3d at 860.

### A.

Applying these principles, we conclude that the Commissioner has failed to meet the substantial justification standard. In its decision on the merits of Ms. Scott's DIB and SSI claims, the Court of Appeals found that the ALJ's assessment of her mental and physical condition contained several errors that required remand.

*First*, the appeals court held that the ALJ improperly credited the opinion of the non-treating medical expert, psychologist Ellen Rozenfeld, over the opinion of Ms. Scott's treating psychiatrist, Dr. Christine Tate. *Scott*, 647 F.3d at 739. While Dr. Tate had diagnosed Ms. Scott with bipolar disorder after seeing her on a monthly basis, Dr. Rozenfeld concluded – solely on the basis of hearing Ms. Scott's testimony and examining the record – that Ms. Scott suffered from major depression. *Id.* at 730, 737-38. The Court of Appeals explained that the ALJ was not entitled to accept Dr. Rozenfeld's opinion over Dr. Tate's diagnosis on this point because, contrary to Dr. Rozenfeld's conclusion that the medical record contained no evidence of manic episodes that would support a diagnosis of bipolar disorder, such evidence was in fact present in the record. *Id.* at 739.

The appeals court also stated that the ALJ "was too quick to read inconsistency" into Dr. Tate's statement of Ms. Scott's ability to work and his assessment of her responsiveness to treatment. *Scott*, 647 F.3d at 739. The Seventh Circuit criticized the ALJ's decision to focus on Dr. Tate's finding that Ms. Scott responded well to treatment while ignoring other evidence, including Ms. Scott's paranoia and bouts of crying. *Id.* at 739-40. The court of appeals observed that the "ALJ's

4

analysis reveal[ed] an all-too-common misunderstanding of mental illness," as bipolarity necessarily includes fluctuation in symptoms. *Id.* at 740. And, the appeals court pointedly stated that "[t]he ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits." *Id.*

The Seventh Circuit found one additional error in the ALJ's treatment of Dr. Tate's opinion. Having decided not to give controlling weight to Dr. Tate's opinion, the ALJ was required by 20 C.F.R. § 404.1527(d)(2) to determine what weight to give the opinion, "consider[ing] the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740. The ALJ, however, did not conduct the analysis by Section 404.1527(d)(2). Instead, the ALJ ignored factors which favored adopting Dr. Tate's analysis, such as the fact that she is a psychiatrist and not a psychologist; that she treated Ms. Scott for over a year; and that she did so on a monthly basis. *Id.* As there was no evidence that the ALJ assessed this information, the Court of Appeals concluded that the ALJ's treatment of Dr. Tate's analysis was "unsatisfactory" and – without more – required remand. *Id.*

*Second*, the Court of Appeals found a separate error that required remand: the ALJ's erroneous assessment of Ms. Scott's physical impairments. The appeals court found that the ALJ improperly included limitations unsupported by evidence in the record in her hypothetical questions to the vocational expert ("VE"). *Scott*, 647 F.3d at 740. The appeals court also held that the ALJ failed to consider the evidence Ms. Scott produced in the form of her own testimony and medical evidence that showed that she had trouble using her hands. *Id.* at 740-41. Finally, the court held that the ALJ failed to build the requisite "logical bridge" between the evidence and her conclusion that Ms. Scott could occasionally lift 20 pounds and stand for up to 6 hours; perhaps even more

significant for purposes of this motion was the appeals court's statement that "the primary piece of evidence that she [the ALJ] relied on does not support the propositions for which it is cited." *Id.*

*Third*, the court of appeals pointed out several "serious flaws" in the ALJ's credibility assessment that the court found "troubling." *Scott*, 647 F.3d at 741. The court outlined these flaws "so that the SSA does not repeat them on remand." *Id.* Among the problems the appeals court identified were: (1) the ALJ failed to consider how Ms. Scott's night-time hallucinations would affect her ability to function during the day; (2) the ALJ improperly used Ms. Scott's claim that she hears voices as evidence against her credibility rather than investigating the reason Ms. Scott hears voices; and (3) the ALJ found Ms. Scott's description of her mental deficiencies not credible simply because she could remember where her pharmacy was, even though her doctors did not similarly doubt her complaints of deficiencies in memory and concentration. *Id.*

The decision of the court of appeals in our case bears resemblance to the discussion in *Thouvenot*, 596 F.3d at 384-86, where the Seventh Circuit reversed the district court's denial of the plaintiff's EAJA petition. In *Thouvenot*, as in the instant case, the appellate court found error with the ALJ's lack of knowledge of the nature of bipolarity and the ALJ's discounting of the opinions of treating physicians. *Id.* at 385. The Seventh Circuit emphasized the ALJ's error in focusing on the claimant's "good days" rather than "bad days," thus ignoring that individuals with bipolar disorder are "likely to have better days and worse days." *Id.* The appeals court determined that the government's position was not substantially justified despite prevailing at the district court level. *Id.* at 386. Here, the court of appeals similarly determined that the ALJ in Ms. Scott's case erred by discounting the opinion of her treating physician and ignoring evidence of Ms. Scott's bad days, including her bouts of crying and paranoia. *Scott*, 647 F.3d at 740.

In determining whether a Commissioner's defense of an ALJ's opinion was substantially justified, the Seventh Circuit has also looked to whether, "[w]hen an ALJ poses a hypothetical question to a vocational expert, the question . . . include[d] all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). In *Stewart*, the Seventh Circuit found that the ALJ's decision lacked substantial justification where the hypothetical questions to the VE failed to include all of the limitations supported by the record. *Id.* at 684-85; *see also Young v. Barnhart*, 134 Fed. Appx. 81, 83-84 (7th Cir. 2005) (reversing order denying EAJA fees where hypotheticals the ALJ posed to VE were fundamentally flawed and omitted crucial information about the claimant's difficulties). Similarly, in Ms. Scott's case, the Seventh Circuit found that the ALJ posed a hypothetical to the VE that included evidence not in medical reports and relied on the non-treating physician's erroneous finding that the record contained no evidence of manic episodes. *Scott*, 647 F.3d at 739, 740. This error also supports a finding that the Commissioner's position was not substantially justified.

The Commissioner argues that in spite of the errors discussed in the Seventh Circuit Opinion, his position was nonetheless substantially justified because, as in *Bassett*, the ALJ's "cursory and inadequate" analysis of an important point was not sufficient to find the Commissioner's defense of the ALJ's opinion unreasonable (Def.'s Resp. at 6). However, in its decision in our case, the court of appeals did not merely criticize the ALJ's analysis of one important point, or find its explanation of one point cursory or inadequate. Rather, the appeals court identified a host of problems with the ALJ's approach to the case, several of which have in the past provided grounds for the court of appeals to find a lack of substantial justification.

7

In sum, the appeals court's holding identified multiple errors that the ALJ committed, including ignoring important aspects of Ms. Scott's diagnosis from her treating physician; posing an important hypothetical not justified by the facts; "cherry-picking" evidence from the record to support a denial of benefits; citing evidence that did not support the proposition for which it was cited; and exhibiting "an all-too-common misunderstanding of mental illness." These errors the Seventh Circuit found, and the language used by the appeals court in explaining them, persuades us that this is not a "close case" where the Commissioner's position, though not supported by substantial evidence, nonetheless was substantially justified. We hold that the Commissioner's position here was not substantially justified, and that Ms. Scott is entitled to reasonable attorney's fees under EAJA.

### III.

We next consider to whether the amount of attorneys' fees Ms. Scott seeks – in terms of hourly rate and number of hours – is reasonable. Ms. Scott has requested a total of $38,532.33 in costs and attorneys' fees. Her attorneys submitted a detailed breakdown of hours spent on this matter in both the district court and court of appeals. Ms. Scott asserts that her attorneys worked 218.7 hours: 59.6 hours[1] in the district court for Ms. Scott's initial claim; 151.4 hours in the appeals court; and another 7.7 hours on the EAJA petition (Pl.'s Mot. at 9; Pl.'s Reply at 13-14). Working from a table from the Consumer Price Index ("CPI") included with their motion for fees, Ms. Scott's

---

[1] While Ms. Scott's motion for fees states that her attorneys worked 59.9 hours (Pl.'s Mot. at 9), the itemized time sets forth 59.6 hours (Pl.'s Mot., Ex. B). Because the ultimate amount Ms. Scott is requesting, $10,206.50, is properly calculated using the 59.6-hour figure, that is the figure the Court uses.

attorneys calculated that their hourly rate should be assessed at $171.25 for their district court work, and at $175.00 for their court of appeals work and EAJA motion practice.[2]

### A.

EAJA limits to $125.00 the hourly rate a prevailing party's attorney may recover, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "If [the party] points to inflation he [or she] still must show that it actually justifies a higher fee; . . . the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal service . . . ." *Mathews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011). Further, the plaintiff's lawyer must show that without the requested fee increase, the claimant could not have found a lawyer capable of handling her claim in the same geographic area. *Id.* at 565. If the Commissioner contests the hourly attorney rate sought in its response brief, the claimant may use his or her reply brief to justify the rate sought. *Id.* at 563.

In her motion for fees, Ms. Scott did not show how inflation has increased the cost of providing adequate legal service; rather, she contended that the CPI justified the requested hourly rates of $171.25 and $175.00 (Pl.'s Mot. at 9). In her reply brief, however, Ms. Scott explained that since the amendment of EAJA in 1996, her attorney's non-contingency hourly rate has increased

---

[2] Plaintiff's attorneys also request $172.30 in costs and $275.50 for 2.9 hours of legal assistant work at a rate of $95 per hour. The Commissioner does not dispute these costs and fees.

52 percent, office rent has increased by three percent per year, the salary for his staff has increased by five percent per year, and the cost of paper, continuing legal education, and Westlaw accounts have also increased (Pl.'s Reply at 9-10). In addition, Ms. Scott attached affidavits from two attorneys who practice in the Social Security arena, who have sought and received EAJA fees or non-contingency fees above $175.00 per hour for similar work. Attorney Jan L. Kodner stated that the Social Security Administration has awarded him EAJA fees between $165.00 and $300.00 per hour, and attorney Eric Schnaufer stated that he charges between $175.00 and $300.00 per hour for non-contingency EAJA work he performs for other attorneys (Pl.'s Reply: Exs. 1 and 2).

In light of the foregoing evidence, we find that Ms. Scott's request for an increased hourly rate from $125.00 to $171.25 and $175.00, respectively, is justified. We award Ms. Scott fees at the rates of $171.25 for initial district court work, and $175.00 for subsequent work in the court of appeals and on this petition for EAJA fees.[3]

### B.

The Commissioner also contests the 218.7 hours of work for which Ms. Scott's attorneys seek compensation in this case.[4] The prevailing party has the burden of proving that the hours worked were reasonable. *Hensley*, 461 U.S. at 433. Fee requests should not be awarded for work that is "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Though there is "no precise rule or formula" for determining what fees are reasonable, *id.* at 436-37, courts should avoid

---

[3] Ms. Scott also argues that the rate of $175.00 per hour is reasonable because district courts only reverse and remand about one-half of Social Security cases per year, and, thus, factoring in the 54 percent risk of loss yields a real-world rate of compensation of only $67.50 (54% of $125.00) per hour (Pl.'s Reply at 9). In light of our decision to allow Ms. Scott's attorneys the requested rate of $175.00 per hour for other reasons, we decline to address this novel argument.

[4] Plaintiff's attorneys do not seek compensation for 12 hours of attorney time spent "to come up to speed on the case" at the appellate level (Pl.'s Mot. at 9 n.1).

10

"engag[ing] in an arbitrary determination of how long a 'reasonable' attorney would spend" on a certain matter. *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007). As the Seventh Circuit has observed, "[l]awyers do not come from cookie cutters. Some are fast studies and others require extra preparation." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). On the other hand, we have a right to expect efficiency from plaintiff's attorneys who, as here, are highly experienced specialists in litigating social security appeals.

In general, for the government to successfully challenge the number of attorney hours requested under EAJA, the government should do more than point to a disparity between the fees sought in the instant case and the amount of fees awarded in other cases. *Tchemkou v. Mukasey*, 517 F.3d 506, 511 (7th Cir. 2008). "If the Government could show that the cases cited were similar to the present case with respect to volume of the background materials, the procedural nature of the case, and the number and complexity of the issues presented, its argument would carry more weight." *Id.* But, where the government offers "no objective standard" and "no rationale" for concluding that the plaintiff's attorney's hours were excessive, a decision on whether the number of hours was reasonable is "arbitrary." *See O'Sullivan*, 484 F. Supp. 2d at 837.

In her motion for fees, Ms. Scott points to recent EAJA decisions within this circuit awarding fees for 40 to 60 hours of work in the district court (Pl.'s Reply at 10). *See, e.g., Schulten v. Astrue*, No. 08 C 1181, 2010 WL 2135474, at *6 (N.D. Ill. May 28, 2010) (collecting cases finding that permissible range of attorney hours spent in district court for Social Security cases is 40 to 60 hours). In response, the Commissioner argues that plaintiff's attorneys spent an excessive amount of time in the district court, when comparing the 59.6 hours logged by plaintiff's attorneys in this case to the 20 and 40 hours of time spent in litigating social security appeals in other federal district courts

around the country (Defs.' Resp. at 12-13 n.6). The Commissioner argues that plaintiff has not shown that her attorneys "did anything special" to justify spending more than 40 hours of work (Def.'s Resp. at 14).

The parties carry over this same debate to the question of the hours spent by plaintiffs' attorneys on appeal. The cases Ms. Scott cites involve cases where attorneys worked fewer than the 154 hours logged by plaintiff's attorneys at the appellate level in this case (Pl.'s Mot. at 10-11), but Ms. Scott contends that the extra hours spent on the appellate work here are warranted for two reasons. *First*, the time included dealing with problems in the administrative record (*Id.* at 10). *Second*, Ms. Scott contends that the arguments on appeal were very fact specific and required a detailed analysis of the evidence of record (Pl.'s Reply at 11), as well as a "thorough reworking" of her case, involving research of the law in other circuits and analysis of the opinion below (*Id.*).

The Commissioner, for his part, argues that the court cases cited by plaintiff demonstrate the excessiveness of Ms. Scott's attorneys' fee request for the time spent on appeal, because those cases involved between approximately 25 to 50 fewer hours at the appellate level than plaintiff's counsel spent here, an amount the Commissioner refers to as "significant[]" (Def.'s Resp. at 10-12). The Commissioner suggests that plaintiff's attorneys cannot justify 151.4 hours of work, because unlike in *Villano v. Astrue*, No. 2:07-CV-187, 2009 WL 1803131, at *4 (N.D. Ind. June 23, 2009), where plaintiff's attorneys worked 126.8 hours at the appellate level, the instant case does not involve any issue of first impression (Def.'s Resp. at 11-12). The Commissioner also says that this difference cannot be chalked up to problems with the record, since that accounts for only 3.1 hours of time on appeal (*Id.* at 10).

The Commissioner asks that the award plaintiff's attorneys request "be significantly reduced," but the Commissioner does not specify how many or which hours we should reduce (Def.'s Resp. at 14). Nor does the Commissioner identify any particular entries of time that he claims were excessive or unreasonable (*Id.*).

This Court has been "skeptical about the wisdom of assessing the reasonableness of the time spent on a social security appeal by comparison simply to the amount of time spent by plaintiffs in briefing appeals in other cases." *Bryan v. Astrue*, No. 08 C 5472, 2010 WL 438384, at *4 (N.D. Ill. Feb. 8, 2010). "[I]t carries with it the vice of glossing over differences in the factual records, the ALJ's opinions and the legal issues that can create significant differences in the amount of time that is reasonable for attorneys to spend in briefing a social security appeal." *Id.* As in *Bryan*, the Commissioner did not "point out arguments that were unnecessary or excessive time spent on arguments properly made." *Id.* Thus, we are not willing to reduce Ms. Scott's attorneys' fee request based merely on "generic comparisons" between this case and others. *Id.* See *Tchemkou*, 517 F.3d at 511 (government should do more than merely point to a disparity between the fees sought in the instant case and the amount of fees awarded in other cases).

Thus, we find that the number of hours Ms. Scott's attorneys worked was reasonable.

### IV.

Finally, the Commissioner contends that any fee award in this case "must be made payable to plaintiff" (Def.'s Resp. at 15). The Seventh Circuit recently held that if the plaintiff has assigned her right to a fee award to her lawyer in advance, "the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer." *Mathews-Sheets*, 653 F.3d at 565. As in *Mathews-Sheets*, "[t]here is no indication of

13

that in this case, so to ignore the assignment and order the fee paid to her would just create a potential collection problem for the lawyer." *Id.* at 565-66. Accordingly, we grant plaintiff's requests that any EAJA fees awarded be made payable directly to her attorney, pursuant to the assignment of fees set forth in Ms. Scott's fee agreement with her counsel (Pl.'s Mot. at 11 and Ex. D).

## CONCLUSION

For the foregoing reasons, we grant Ms. Scott's motion for attorney's fees under the Equal Access to Justice Act (doc. # 58), and award fees in the amount of $38,532.33, made payable to plaintiff's counsel.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: February 16, 2012**